May it please the Court. Good morning. I'm Annie Parker on behalf of Petitioner Ben Feng. Before I address Barajas and the withholding claim, at the outset, it's critical that there was no adverse credibility finding here. So we accept Mr. Feng's testimony as true. And his undisputed testimony requires four key conclusions. One, Mr. Feng expressed anti-corruption political beliefs. He opposed corruption. One, he refused to participate in the fake tool receipt scheme. And he reported the general manager's corruption to Superintendent Shen, the highest official at the State-Owned Highway Department. Two, Shen's corruption investigation was a sham. Shen told Feng that he would investigate, and before Feng heard anything, he was fired. And then when Mr. Feng went back to the superintendent to follow up on the investigation, the superintendent told him that the investigation found that Mr. Feng was corrupt. Three, Shen summoned the police to arrest Mr. Feng on false charges of assault and embezzlement, only after Mr. Feng went back to follow up on the investigation, even after being fired. Okay, and after where he's detained the man in his office, right? And isn't that one of the facts that the BIA relied on? The BIA did say that he refused to leave Superintendent Chen's office, but that does not preclude a finding that his anti-corruption political beliefs, which he continued to express during that meeting, also was one central reason for his persecution. Well, does this turn a little on the text system? Can you boil all the facts down? You said it really did. As far as Feng and the FBI's arrest, did Mr. Feng show a mix between his anti-corruption beliefs and the acts of those beliefs as well as his persecutors? That was the finding below, Your Honor, but the record propels the conclusion that his political opinion was, in fact, at least one central reason for his persecution. Really nothing else explains what happened to him. That's why I was going back to the fact that the police should only call the police after your client refused to leave. So, I mean, it seems like your client just showed up, complained, and then left without causing a scene. It might not have ever been any basis for his assertion of persecution, right? Because he would never have been arrested, he would never have been killed, etc. Well, Your Honor, respectfully, the refusal to leave the office, that Superintendent Chen's reaction would be a massive overreaction if all there was was his refusal to leave the office. There has to be something more going on here. He summoned the police to arrest him and charge him not only with the false charge of embezzlement, but accuse him of assaulting the superintendent. It was not that though. It was not that though. It showed that the police are acting in the direction of the supervisor based on the corruption that the attorney was complaining of. Where is the police's reaction to a police call? A police violation? If the attorney's got a debt? Is the detainee still in here? The record is that they're being directed for corruption purposes by the supervisor. Well, the superintendent is either trying to cover up the corruption or protecting the general manager. The superintendent is suppressing his political opinion because he views Mr. Fink as a threat, and so he abducts the power of the police to suppress his opinion. And so it doesn't really matter whether the police believe they are acting in the direction of the superintendent to persecute Mr. Fink for his political opinion. And in any event, Mr. Fink did tell the police that he was not, in fact, corrupt. He was being framed because he had reported the corruption and was trying to expose the superintendent. The police then defended the superintendent. And so he was just trying to make trouble. He persisted in beating him. And the police facts are very similar to those at issue in Hue v. Boulder, which is more violent, unsatisfied, and a post-reality act case applying for non-essential reasons. But those bad cases have to do with the fact that they're being directed by the persecutors to the third party. I guess in this situation it would be the police. The police are acting for the supervisor. That's what you are doing. Yes, that's what they're doing. Okay. So how do you get past the problem, though, that the police have to have some knowledge, unless it's really so that they're acting in the direction of the persecutors? Because I don't see here how you separate the police. The police is not followed through on a crime as alleged by someone in their peculiar knowledge. And I think they would have to add up to some of that to get the direction for the corruption purpose. That's the case that you are in. Well, Your Honor, again, the superintendent is the one who is behind all of this. And two extraordinary citizens told the police and said, I think this guy is committing corruption, and that we should deal with that. It's reasonable to say they're escaping punishment. The interrogation has been, and Tony was forced to confess, not only to embezzlement, but also to this false assault charge. Police persisted in harassing him and then his family even after he left China for several years. And again, the police did know his opinion because he expressed his anti-corruption beliefs again, and the police indicated their inclination to protect the superintendent from these false charges, or from the charges. If there are no further questions on the asylum claim, I'd like to briefly address the withholding claim. The one central reason standard does not apply to Mr. Nick's withholding claim as is where Heldenbrau has the less demanding a reason standard applies. And he clearly satisfies the less demanding a reason standard, even if he does not satisfy the one central reason standard. Maybe respond to the argument that the government is making, and it's coming to a letter that, I guess, both people have gotten better since that argument came out. I mean, you could debate it in your class, and I'm not going to accuse you of killing you. Just be safe, so I'd like to hear your response to that. Of course, Your Honor. So the government argues that a reason standard only applies to mixed motives claims based on the Barajas' decisions distinguishing of Satino. But all that Barajas was doing is explaining why Satino did not make a decision between the two standards. There simply wasn't any reason to do so. And there can't be a different standing for different withholding claims. Barajas is based on an interpretation of the withholding statute, which applies to all claims. And in any event, the government's argument assumes that Barajas came out differently. In Barajas himself, the agency there found that there was no evidence of an excess, yet Barajas still remanded to the agency to apply a reason standard. But you can understand the logic, I think, of the government's argument, can't you? But let's say, to be honest, even if you said this isn't even a close case, the only reason that this alleged person can get extra wire and not get into that kind of a protected ground, right, and that was the basis of his finding, once he was slowly decided back to the agency to apply this reason standard, well, the agency has already been clear that there was no basis in which the basis for that prosecution was connected to a protected ground. Why would he waste our time in saying that to the agency? I think that's what the government is arguing here. Thank you. I'm sorry, Your Honor, but first of all, even if the agency assumes that once a true reason standard applies, we still have to remand because under Ventura, we can't assume what the agency would have concluded if it had applied the correct standard. And, again, Barajas himself, both the IJ and the BIA there concluded that there was no excess, that there was no evidence, and that the sole reason was they were going after him for money. So they demanded that the agency consider the fact of slander the law reason standard. I'd like to reserve my right to explain. Yes, please. Do you want to hear from the government? Ma'am, please, the court. Good morning. I am Tracy McDonald from the United States Department of Justice's Office of Immigration Litigation, and I represent the Attorney General Jefferson Sessions III. The petitioner in this case seems to have established a nexus to an inaugurated ground to be granted asylum. However, in light of his dismally relevant case law and other record evidence, the petitioner's claims are without merit. The petitioner's claims have been heard and rejected by DHS, an immigration judge, and the board. This court should find that substantial evidence supports the court's determination that the petitioner failed to meet his burden of proof for asylum. Should the petitioner fail to establish a nexus between his alleged hard-earned and vindictive ground? Well, you can see very clearly the argument from the about-it, indicating that it is the use of the situation, what I guess would be the persecutor's, from a legislation point of view, was acting in the direction of the Supreme Judicial Service. So does that make the nexus as stark as it is? Yes. The government already knows the record of evidence is not compelling that the petitioner was harmed on account of his anti-corruption beliefs. But he said that I'm not going to accept these bribes. I'm not going to participate in these fake tokens. This is lawful for the government to be engaged in this type of conduct. I do not have any part of it. The fact that he wouldn't give up the opportunity to speak overnight, he said, and he said that he suffered, was because he wouldn't go along with the scheme. Is that correct? Correct. The government would argue that the retaliation against the petitioner was because he refused to participate in the investment scheme and he refused to be in the superintendent's office. So you're making the distinction between his actions in response to the scheme and his criticism of the corruption. Yes. How do you feel? How do you feel about some of the presumptions on, I guess, the Supreme Justice government's final decision? The petitioner has refused all to participate in the investment scheme. It's what motivated the retaliation. He responded to the letter. I don't want to be on the subject. I hear what you're saying. That's your argument. But how do we know that Councilor Wilson was what was in Jim's mind when he called the police? I guess we can't know what was in his mind, but according to the record, there's no record evidence that the petitioner ever spoke out against the corruption to anyone other than the petitioner. He refused. He refused to participate in the investment scheme, yes. Right, but it wasn't the basis for that, his political view that, I mean, corruption is terrible. I'm completely interested. Not only would I never participate in it, but I think it's a bad idea for anyone in our government to participate in it. The government would argue that there's a distinction between the two, that he has refused to participate in the investment scheme, and he does not. Okay, I hear you. That's a really fine distinction to begin with. But all I'm asking is, what substantial evidence in the record supports the PIA's determination that, in fact, it was the refusal to participate in the corruption scheme that was what was in Jim's mind when he called the police? What basis do you have for arguing that there's no evidence that it's true? Well, as the board pointed out, the third decision in the matter of the NIM is going to be the Marie Holmes case. In that case, the board held that a showing of retaliatory harm for exposing acts of corruption, coupled with evidence that corruption is in some way related to a political system, is not sufficient to show that a victim's anti-corruption beliefs are one central reason for the persecution. The Supreme Court in Elias Zacharias stated that it's insufficient that the persecutor acts from a generalized political motive, and the alien must show that the persecutor made harm or did harm him because of the alien's political opinion. And the government would argue that there is no evidence to prove that the retaliation against the petitioner was based on, solely based on his refusal to participate in the harassment scheme. Well, what do you think? Was it based on his being sent to jail for his being arrested? For his refusal to leave his office. So you disagree that this was a scheme to get him arrested, so to speak, by the, by the student? Was it, if he's been sent, by the record of arresting him, having him arrested because he's of some misconduct, or is it a scheme that the appellate is arguing that it's really because he's not in the office of corruption, he's complaining about it, and they're, they're acting for, for Mr. Sanders, the petitioner. So what's your view on that? How, how is it that the police are not acting on behalf of the corrupt? So who else? As the board held in this case, the government corrupt, the responder did not establish, or excuse me, the petitioner did not establish that his supervisor's embezzlement scheme was connected to high level or overall corruption. Furthermore, the retaliation against the petitioner arose from his refusal to cooperate in the embezzlement scheme. And of course, he refused to leave the superintendent's office, not from his anti-corruption beliefs. And that's what. But, but this could have to accept, uh, Mr. Zane's, uh, representations of, of Mr. Woodbound. What do you think his view of what he, of what he says he had? Um, the court is bound by what the record compels. The government would argue that, um, the record evidence compels, um, that, um, the court does not compel any decision that, um, the petitioner, um, is able to establish in excess. Well, what is the record evidence other than what Mr. Zane said? Is, don't we have his version of what happened? Is there other record evidence other than his view? If there's not, what is the basis for the, for the, for the value of the case? What I'm getting at is if, if, if we're not bound to someone accepting the record as Mr. Zane, Mr. Zane says, these are the things that are happening is why I am in the future of, of, of persecution. I'm not afraid to go back. Yeah. The record's based on his representations, right? If they are, then I think the court is not required to take you into account. You say your responsibility was then when the records supports and finally to the contrary. So I'm asking besides what's the famous representations, what other evidence do we have to determine what happened between Mr. Well, we have what Mr. Zane, or what we have, what the superintendent, I just told the authorities when he called. Oh, this is Mr. Zane, correct. So I'm asking. So how does the board, the terminology for you, Mr. Zane's representations. So as you say, that is overwhelmingly supported by the record. Well, the record evidence is all that can be considered. So, yeah, I guess what I'm saying, I don't, I'm not trying to, to, to split hands with you, but I'm trying to, to get you to tell me what, what Mr. Zane says, what is the record evidence that, that supports the view, just the use of a proposed, a plan as opposed to the view of interpretation. The facts that he represented, that he presented to support that version, as opposed to the version that, that, that they developed. You see, it's based on, as I, spoke on earlier, the, the board's decision in matters. And I'm, I'm closely related. And I believe that, as you stated that, in that case, the board held that a showing of retaliatory harm, coupled with a generalized political motive, is not enough to show that the victim's anti-corruptional use, there was one central reason for the persecution. So, just like in that case, the petitioner, in this case, never expressed a political opinion. He just refused to participate in a local level investment scheme. Okay, so your, your time is up. But I wanted to ask, do you have anything to add to your time, to your letter on the withholding claim? I would just, I, I would just point out that, the petitioner, failed to move on the exhaustive claim for withholding, and that Barajas definitely applies to his asylum claim. But, as far as the withholding of people, I don't have anything to add to what was in the 28-J, but I just wanted to point out that, the petitioner's case was also for, was for asylum, and Barajas does apply to asylum. Okay, thank you so very much. Thank you, sir. I'm here for us, just to make sure you're here. I'm sorry, I should have asked, did you have any further questions? No, I don't. I have no questions for you. Thank you, your honor. I'd like to first set out by addressing the assertions with respect to the matter of UNM. All matter of UNM says is that you can't automatically equate, retaliation after, exposing government corruption, you need something more. Because you can't always assume that they're exposing government corruption for political reasons, versus self-interested reasons. And you can't always assume that the persecutor, is acting because of the political opinion, because you don't even know if the persecutor necessarily knows the political opinion. But here we have facts that not only, Mr. Fang, expressed his political beliefs based on his, being in opposition to corruption and its negative effects on the economy, but Mr. Superintendent Chen was aware of those political beliefs because, Mr. Fang repeatedly expressed them to him. So this is distinguishable from matter of UNM, and the reasoning rejected by the one central reason standard. I'd also like to- Counsel, Counsel Judge Gould, if I can interject. Of course. How do we know that, the statements your client made, were expressions of political belief, as opposed to just, expressions that he wouldn't go along with the, with the scheme? Well your honor, he, opposed the corruption, not just when he was still employed, and refusing to go along with the scheme, but even after he was fired, and he learned the scheme was ongoing, he went back to the superintendent's office to demand why nothing had been done, and explained again to the superintendent, that he opposed corruption because of a really heavy blow, as he said, on China's economy. And so he's not acting out of, you know, his reasons for opposing corruption, transcends self-interest, and purely personal reasons. Thank you. You're welcome. I'd like to also briefly address the fact that, the V.I.A.'s finding that he never spoke out against corruption to anyone, that's clearly contrary to the record. Because, Mr. Feng in fact testified that he, opposed corruption not only to his supervisor, but to the superintendent. So at the very least, that finding, on which the V.I.A. bases this decision, requires remand for the V.I.A. to consider the record, in light of Mr. Feng's undisputed testimony. Okay. Is there one else? I think so there. Okay. Thanks very much. In case you just heard, you will be submitted. And Ms. Parker, we'd like to thank you, and your firm, for being willing to undertake this representation. For you to come on a council such as yourself, to step in. I can't remember, I don't think you were the original lawyer appointed. Yes, well, we're delighted that you came, and had this opportunity. And of course, you did a terrific job as superintendent of the council. So in case you just heard, you will be submitted. Thank you.
judges: Gould, Watford, Sands